In the United States District Court
Northern District of Texas
Dallas Division

| | | |
|---|---|---|
| Ashley Altick | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:25-cv-00463-K |
| | § | |
| American Home Protect, LLC, | § | |
| Porch.com, Inc. and Corinne | § | |
| Maples | § | |
| | § | |
| Defendants. | § | |

## Plaintiff's First Amended Complaint

Plaintiff Ashley Altick files this Original Complaint against American Home Protect, LLC, Porch.com, Inc. and Corinne Maples.

## Parties

1.    Plaintiff Ashley Altick ("Ms. Altick" or "Plaintiff") is an individual citizen of Texas.

2.    Defendant American Home Protect, LLC ("AHP") is a Missouri for-profit corporation doing business in Texas. It has been served in this lawsuit.

3.    Defendant Porch.com, Inc.[1] ("Porch") is a foreign corporation doing business in Texas. It may be served by serving its registered agent, URS Agents, LLC, 3610-2 N. Josey Lane, Suite 223, Carrollton, Texas 75007.

4.    Defendant Corinne Maples ("Ms. Maples") is an individual citizen of the State of Texas. Ms. Maples has been served in this lawsuit.

5.    AHP, Porch and Ms. Maples are collectively referred to as "Defendants."

---

[1] In Ms. Altick's Original Complaint, this Defendant was originally identified as Porch Group, Inc. d/b/a Porch.com, Inc. Porch.com, Inc. is a wholly owned subsidiary of Porch Group, Inc., which is a publicly traded company (NASDAQ: PRCH).

## Introduction

6.    This lawsuit involves claims of retaliation under the Sarbanes-Oxley Act ("SOX") and Consumer Finance Protection Act ("CFPA"). It also includes retaliation claims under Title VII of the Civil Rights Act of 1964 ("Title VII") against AHP and under the Equal Pay Act and Texas Labor Code Chapter 21 ("Tex. Labor Code Ch. 21") against both AHP and Porch.

7.    Ms. Altick was employed by AHP and Porch as a part-time in-house counsel.

8.    During her employment, Ms. Altick engaged in activity protected by SOX and CFPA. Ms. Altick reported business practices that would cause Defendants to overstate their revenue, understate liabilities or otherwise misrepresent financials, which would give misleading information in financial statements to shareholders and investors. She also reported deceptive practices against consumers pertaining to home warranty products and services.

9.    Defendants retaliated against Ms. Altick after she engaged in activity protected by SOX and CFPA by (1) putting Ms. Altick on a Performance Improvement Plan, (2) firing Ms. Altick, and (3) failing to pay Ms. Altick the promised severance if she continued her employment to June 23, 2023.

10.    Defendant AHP also retaliated against Ms. Altick after she engaged in activity protected by Title VII, the Equal Pay Act and Tex. Labor Code Ch. 21 by putting her on a performance improvement plan, terminating her, and failing to pay the promised severance.

11.    Ms. Altick asserts claims against AHP, Porch and Ms. Maples for violations of Sarbanes-Oxley Act, 18 U.S.C. § 1514A ("SOX") and the Consumer Financial Protection Act of 2010, 12 U.S.C. § 5567 ("CFPA").[2]

---

[2] Ms. Altick's initial September 7, 2023 complaint filed with the Department of Labor asserted a SOX complaint against AHP and Porch. After OSHA interviewed Ms. Altick, it determined that her complaint, supplemented by her interview, included a CFPA claim and that Ms. Maples should be added as an individual Respondent. OSHA notified Respondents AHP, Porch, and Maples of the complaint and

12.   On September 7, 2023, Ms. Altick filed a Complaint with the Department of Labor and, on June 3, 2024, the Department of Labor issued findings in Ms. Altick's favor. The findings concluded there is reasonable cause to believe that AHP, Porch, and Ms. Maples violated CFPA and SOX and retaliated against Ms. Altick for her protected activities. Following the Department of Labor findings, Defendants timely filed objections to the Department of Labor findings.

13.   Following Defendants' objections, this matter was scheduled for hearing in May 2025 before a Department of Labor Administrative Law Judge.

14.   The Department of Labor has not issued a final decision within 180 days of Ms. Altick's filing of her SOX complaint or within 210 days of filing of the CFPA complaint.

15.   Accordingly, Ms. Altick timely exercises her right to bring her claims against Defendants for *de novo* review in this Court under 18 U.S.C. § 1514A and 12 U.S.C. § 5567.

16.   During her employment, Ms. Altick also engaged in activity protected under Title VII and the Equal Pay Act by reporting her good faith belief that AHP may have violated Title VII and the Equal Pay Act by paying a female employee less than a male peer. This activity is also protected under the Tex. Labor Code Ch. 21.

17.   Ms. Altick timely filed a Charge of Discrimination asserting retaliation with the EEOC against AHP on August 28, 2023. The EEOC issued its Dismissal and Notice of Rights to Ms. Altick on her Charge against AHP on April 9, 2025. Ms. Altick timely sues on her retaliation claim against AHP.

---

advised Respondents that SOX and CFPA complaints had been filed and that Ms. Maples would be included as an individual Respondent under the authority granted to it by 29 C.F.R. § 1985.104(e)(3) and 29 C.F.R. § 1980.104(e)(3).

**Venue and Jurisdiction**

18.   Venue is proper in the Northern District because Defendants did business in Dallas County and because Plaintiff performed her job duties by working remotely in Dallas County.

19.   This Court has federal jurisdiction over the claims asserted under 18 U.S.C. § 1514(A), 12 U.S.C. § 5567, Title VII, and the Equal Pay Act. This Court has supplemental jurisdiction over Ms. Altick's Tex. Labor Code Ch. 21 claims.

**Factual Background**

20.   Ms. Altick was originally hired by United Debt Counselors ("UDC") in May 2020. Ms. Altick performed services for companies related to UDC, which were AHP and Riprock Holding, LLC (a regulatory company for AHP). Ms. Altick was a part-time employee and worked 30 hours a week. Ms. Altick reported to Ms. Maples when hired and until her last day on June 23, 2023.

21.   Porch wanted to acquire AHP and Riprock. In advance of that acquisition, Ms. Altick was moved to the AHP payroll. Porch acquired AHP and Riprock in September 2021. Ms. Altick continued to perform her legal duties for AHP and Riprock (collectively, "AHP") on a part-time basis. She also began to perform some work for Porch. Despite also performing work for Porch, Ms. Altick continued to report to Ms. Maples.

22.   The AHP and Porch products at issue are home warranties.

23.   A homeowner will buy a home warranty, which will provide protection if certain covered events occur during the 36 months that the warranty is in effect. When the homeowner pays for the warranty, the payments are front-loaded, meaning that the homeowner pays a monthly fee for 18 months, but gets 36 months of coverage. The consumers can pay for these home warranty products directly to AHP or Porch or through a third-party finance company. When financed, the

third-party finance company pays the entire 36 months of premiums to Defendants at the beginning of the warranty. Defendants become the custodians of funds for the consumer because the payments are made in this front-loaded fashion or paid entirely in advance when financed through a third-party finance company.

24.    Defendants communicate with their customers through a variety of ways including mail through the U.S. Postal Service and via electronic mail. Defendants mail and email homeowners copies of the home warranties purchased and communicate with their customers about home warranty claims through mail, email, and phone calls.

25.    On May 5, 2022, Porch offered Ms. Altick a full-time position. This position required her to devote 75% of her time to AHP and 25% of her time to Porch. Ms. Altick emailed on August 18, 2022 advising that she intended to accept the full time role and verbally accepted the position in a video call on August 29, 2022. However, Ms. Altick noted that the written offer letter did not include the tuition reimbursement paid to her each January under the CARES Act, which was part of her AHP compensation. Porch's general counsel told Ms. Altick he would run this issue down.

26.    On August 22, 2022, AHP received an inquiry from a federal regulating agency ("Regulator's First Inquiry"). The response to this Regulator's First Inquiry required significant legal work. AHP made Ms. Altick a full-time employee on September 6, 2022 so Ms. Altick could continue to perform her normal job duties and work on the response to the Regulator's First Inquiry.

27.    AHP and Porch later rescinded Ms. Altick's full-time offer of employment—even though Ms. Altick had previously accepted it.

28.  In December 2022, Ms. Altick formally returned to her part-time position of 30 hours a week at part-time pay. At her part-time rate, Ms. Altick earned $125,400 per year.

29.  On January 4, 2023, Ms. Maples issued Ms. Altick her performance review for the time period from May 2021 to May 2022. Ms. Maples noted that Ms. Altick was a "valuable employee to the team" and that "her performance through May of 2022 was good to excellent." Ms. Maples noted "some degradation in performance and prioritization of tasks and communication with management on those items" occurring after the May review period. Yet, Ms. Maples ended the performance review by stating "The last few weeks this has seemed to improve so hopefully that will continue."  Ms. Maples also told Ms. Altick in the review that Ms. Altick does "a great job", is "very professional", has "an extensive amount of knowledge" and is a "huge asset."

30.  This performance review was delivered shortly after Ms. Altick was pushed back to a part-time role that limited her work to 30 hours per week.

31.  On January 20, 2023, the same federal regulating agency made another inquiry to AHP ("Regulator's Second Inquiry"). Though Ms. Altick now had to spend a great deal of time on the Regulator's Second Inquiry, she was not moved to a full-time position as had been done in 2022. In essence, Ms. Altick's workload expanded with the Regulator's Second Inquiry, but she was still expected to perform all of her work in 30 hours a week instead of 40 hours a week.

32.  Beginning in late January 2023, Ms. Altick reported to management her concerns that certain business practices would cause AHP and Porch to overstate their revenues, understate liabilities or otherwise misrepresent their financial statements. The business practice at issue would also constitute deceptive practices against consumers pertaining to home warranty products and services.

33.  For confidentiality and privilege reasons, Ms. Altick does not state the exact content of her reports in this Complaint. However, Ms. Altick identifies the dates of each act of protected activity that would include her concerns that certain business practices would cause AHP and Porch to overstate their revenues, understate liabilities or otherwise misrepresent their financial statements, and/or that would constitute deceptive practices against consumers pertaining to home warranty products and services ("SOX/CFPA Issue No. 1").

34.  On January 23, 2023, Ms. Altick learned via email about SOX/CFPA Issue No. 1.

35.  On January 27, 2023, Ms. Altick advised Defendants by email her concerns about SOX/CFPA Issue No. 1.

36.  Also, on January 27, 2023, Ms. Altick advised Defendants by email her concerns about paying a female employee less than a male peer. Ms. Altick continued to follow up on these concerns by email dated February 3, 2023.

37.  On January 31, 2023, Ms. Altick followed up with Defendants by email to Ms. Maples, Elysia Sinclair ("Ms. Sinclair") and Malcolm Conner ("Mr. Conner") on her concerns regarding SOX/CFPA Issue No. 1.

38.  On February 17, 2023, Defendants issued Ms. Altick a "merit stock bonus."

39.  On February 23, 2023, Defendants gave Ms. Altick a "Shout Out" on a division-wide Zoom call for her good work on the legal and compliance piece of the Porch Warranty product.

40.  On February 23, 2023, Ms. Altick reported concerns to Defendants via email to Ms. Maples, Mr. Conner and Ms. Sinclair that certain business practices would cause Porch to overstate its revenues, understate liabilities or otherwise misrepresent its financial statements, and/or that would constitute deceptive practices against consumers pertaining to home warranty products and services on a Porch product ("SOX/CFPA Issue No. 2").

41.   On March 3, 2023, Ms. Altick followed up with Defendants by email to Mr. Conner, Ms. Sinclair, Ms. Maples and two other Porch employees regarding SOX/CFPA Issue No. 2.

42.   On March 6, 2023, Ms. Altick emailed Porch's general counsel Matthew Cullen ("Mr. Cullen") about her concerns regarding SOX/CFPA Issue No. 2.

43.   On March 10, 2023, Ms. Altick again emailed her concerns to Porch leadership regarding SOX/CFPA Issue No. 2.

44.   On March 16, 2023, AHP issued its first response to the January 20, 2023 Regulator's Second Inquiry.

45.   On March 21, 2023, Ms. Altick received "thank you" emails from Mr. Cullen, Porch General Counsel, and Mr. Conner, Porch Home Services Division General Manager, for her hard work responding to the inquiries from the federal regulating agency.

46.   On March 22, 2023, Ms. Altick emailed Nakida Thomas ("Ms. Thomas") and Ms. Maples again to follow up on SOX/CFPA Issue No. 1.

47.   On March 27, 2023, Defendants, through Ms. Maples and Mr. Conner, put Ms. Altick on a Performance Improvement Plan ("PIP"). Defendants told Ms. Altick that they had concerns with her lack of leadership, communication, prioritization, "solve every problem" attitude, and failure to meet critical deadlines. Defendants also criticized Ms. Altick's work on the Porch Warranty product—even though it had just complimented her work on that product during the February 23, 2023 division-wide shout out just a month before. The PIP did not have a timeline for improvement. The PIP did not identify any improvement benchmarks or any performance measures. Defendants did not meet with or counsel Ms. Altick on her performance while Ms. Altick was on a PIP. Upon information and belief, Defendants intended to terminate Ms. Altick as soon as Defendants hired a person to replace her and to take over her work.

48. On March 31, 2023, Ms. Altick again notified Defendants about her concerns regarding SOX/CFPA Issue No. 2 via email to Ms. Maples and Mr. Conner.

49. On April 5, 2023, Ms. Altick again sent a follow-up question to Defendants on her concerns regarding SOX/CFPA Issue No. 1 via email to Ms. Maples, Ms. Thomas and Mr. Conner.

50. On April 12, 2023, Ms. Altick again emailed Defendants about her concerns regarding SOX/CFPA Issue No. 1 via an email to Ms. Maples, Ms. Thomas and Mr. Conner.

51. On April 13, 2023, Ms. Altick exchanged more emails with Defendants about the concerns regarding SOX/CFPA Issue No. 1 in emails to Ms. Maples, Ms. Thomas and Mr. Conner.

52. On April 20, 2023, Defendants told Ms. Altick they were terminating her employment "because there are gaps between your performance and the expectations of our in-house Legal Counsel." Defendants indicated they would offer Ms. Altick a soft-landing and continue her employment for two more months (making her last day June 23, 2023). During this time period, they expected Ms. Altick to continue to devote her best efforts to her role and to transition her work.

53. Defendants also offered to provide her a severance agreement at the end of the two month period in exchange for Ms. Altick's signing a separation agreement. The severance would entitle her to four weeks of pay and one month of COBRA premium.

54. After being told on April 20, 2023 she was being terminated due to her poor performance, Ms. Altick chose to accept the "soft landing" offered and continued to work for Defendants.

55. On May 11, 2023, Ms. Altick again emailed Defendants about her concerns regarding SOX/CFPA Issue No. 1 in emails to Ms. Thomas and Ms. Maples.

56.    On May 19, 2023, Ms. Altick again raised concerns via email to Mr. Conner, Ms. Maples and Ms. Thomas regarding SOX/CFPA Issue No. 1.

57.    On June 7, 2023, Ms. Altick's counsel put Defendants on notice of her legal claims by sending Defendants a letter outlining her legal claims.

58.    On June 23, 2023, Ms. Altick worked her last day of employment per the "soft landing" offered to her on April 20, 2023.

59.    However, Defendants did not provide Ms. Altick the promised severance package of four weeks' pay plus one month of COBRA premiums in exchange for a separation agreement. Though Defendants promised her this benefit if she worked the extra two months, Defendants did not keep their promise.

60.    On September 7, 2023, Ms. Altick timely filed her SOX complaint with OSHA. After Ms. Altick's interview, OSHA determined that her complaint also included a CFPA claim and that Ms. Maples should be named individually as a Respondent.

61.    On June 3, 2024, the Department of Labor issued findings in Ms. Altick's favor ("Findings"). The Findings concluded there is reasonable cause to believe that AHP, Porch, and Ms. Maples violated CFPA and SOX and retaliated against Ms. Altick for her protected activities.

62.    The Findings awarded Ms. Altick a wide array of relief, some of which included:

    a.    An order to immediately reinstate Ms. Altick to her former position at her previous rate of pay;

    b.    Back pay of $96,383.12 for the period starting June 24, 2023 through June 3, 2024 and continuing to accrue until paid;

    c.    Interest on the back wages in the amount of $3,293.85, compounded daily, as of June 3, 2024 and continuing to accrue;

    d.    Compensatory damages in the amount of $61,610.06;

e.  Interest on the pecuniary compensatory damages in the amount of $848.06 as of June 3, 2024, and thereafter until Respondents make a *bona fide* offer of reinstatement; and

f.  Reasonable attorney's fees.[3]

63.  Following the DOL Findings, Defendants did not reinstate Altick to her former position.

64.  Because Defendants contend that Altick's former position had been filled, Defendants offered Ms. Altick a position as a Litigation Manager, Property and Casualty Insurance for Homeowners of America (another Porch subsidiary). Ms. Altick has no experience in this area. The position originally was offered as a full-time position, but it paid only Ms. Altick's part-time salary. It also did not include all of the bonuses Ms. Altick had received during her employment, such as the CARES Act bonus.

65.  Ms. Altick objected to this job offer because it required her to work full-time for her old part-time salary and did not reinstate all of the benefits she had received prior to her termination. After discussion between counsel,  Defendants' agreed to make this a part-time job since Ms. Altick had been a part-time employee when she was terminated.

66.  The offer letter stated, "[Ms. Altick] will report to Chad Hughes" and Ms. Altick wanted to speak to him to get more details about the position. Ms. Altick asked Defendants to allow her to discuss the position with Mr. Hughes before her deadline to accept the position. As an attorney, Ms. Altick wanted to determine if she could accept the position without committing legal malpractice as this job position was outside of her areas of expertise. Defendants did not let Ms. Altick speak with Mr. Hughes, the supervising manager, or the hiring manager before the deadline it gave her to accept the position. Under those circumstances, Ms. Altick could not accept the position.

---

[3] For space reasons, Ms. Altick does not set forth the entirety of the relief ordered in the Findings; however the Findings letter can be found on the Department of Labor's website.

67. Ms. Altick contends Defendants did not make a *bona fide* offer of reinstatement in violation of the Findings.

68. On July 3, 2024, Defendants timely filed objections to the Department of Labor Findings.

**Legal Claims Against Defendants**

**SOX Claims**

69. Ms. Altick incorporates the preceding paragraphs as if restated herein.

70. Porch.com, Inc. is a company within the meaning of 18 U.S.C. § 1514A because it is a subsidiary of Porch Group, Inc., which is a publicly traded company (NASDAQ ticker: PRCH), and is a company whose financial information is included in the consolidated financial statements of Porch Group, Inc.

71. American Home Protect LLC is a subsidiary of a company that is within the meaning of 18 U.S.C. § 1514A because it is a subsidiary of Porch Group, Inc., which is a publicly traded company (NASDAQ ticker: PRCH), and is a company whose financial information is included in the consolidated financial statements of Porch Group, Inc.

72. Corinne Maples is the president and general manager of AHP and, as such, is a person within the meaning of 18 U.S.C. § 1514A.

73. Ms. Altick is an employee within the meaning of 18 U.S.C. § 1514A.

74. As cited in the preceding paragraphs, Ms. Altick engaged in activity protected by 18 U.S.C. § 1514A on numerous dates between January 20, 2023 and June 7, 2023.

75. Ms. Altick had a good faith belief that Defendants were engaging in activities that would violate some categories covered by SOX including mail fraud, wire fraud, securities fraud, any SEC rule or regulation or any federal law relating to fraud against shareholders.

76.   Ms. Altick engaged in protected activities by making complaints to and notifying management about business practices that would cause the Defendants AHP and Porch to overstate their revenues and/or understate their liabilities, which would provide misleading information in their financials to shareholders and investors. Ms. Altick engaged in protected activities by making complaints to and notifying management about business practices that could constitute mail fraud and/or wire fraud.

77.   Defendants were fully aware of Ms. Altick's protected conduct because her concerns were in emails sent to Ms. Maples, Mr. Conner and other members of Defendants' management and/or legal team such as Mr. Cullen, Ms. Thomas, and Ms. Sinclair.

78.   Defendants retaliated against Ms. Altick. Defendants subjected Ms. Altick to unfavorable personnel actions in violation of 18 U.S.C. § 1514A(a).

79.   Defendants placed Ms. Altick on a Performance Improvement Plan on March 27, 2023, just a few weeks after she first engaged in protected activity.

80.   Less than one month later, Defendants told Ms. Altick she would be terminated for poor performance on April 20, 2023.

81.   Despite telling Ms. Altick she was being fired for poor performance,  Defendants told Ms. Altick they would give her a "soft landing" and asked her to work until June 23, 2023 so Defendants could find a replacement for her and she could train her replacement. Defendants promised to give Ms. Altick four weeks of severance pay and one month of COBRA premium if she worked until June 23, 2023 and signed a separation agreement and release.

82.   Ms. Altick continued to engage in protected activity after being told of her termination on April 20, 2023.

83. On May 11, 2023 and May 19, 2023, Ms. Altick sent additional emails outlining her concerns that certain business practices would cause AHP and Porch to overstate their revenues, misrepresent their financials, and/or that would constitute deceptive practices against consumers pertaining to home warranty products and services.

84. Ms. Altick's counsel put Defendants on notice of Ms. Altick's legal claims on June 7, 2023.

85. After Ms. Altick's employment terminated on June 23, 2023, Defendants never gave Ms. Altick the promised severance package.

86. The circumstances set forth in the preceding paragraphs are sufficient to raise the inference that Ms. Altick's protected activity was a contributing factor to (1) the Performance Improvement Plan, (2) her termination, and (3) the refusal to provide her the promised severance.

87. Defendants cannot prove by clear and convincing evidence that they would have taken the same action in the absence of Ms. Altick's protected activity.

88. Defendants' violations of SOX have damaged Ms. Altick. Ms. Altick seeks the damages awarded to her in the DOL Findings as well as her reasonable and necessary attorney's fees incurred in pursuit of this claim.

## **CFPA Claims**

89. Ms. Altick incorporates the preceding paragraphs as if restated herein.

90. All Defendants are a covered person or service provider within the meaning of 12 U.S.C. § 5567.

91. Defendants sell home warranty products and services to consumers. These products are often financed through third party finance companies or through Porch itself. AHP is paid by the

finance companies at the time the home warranty is sold and AHP is the custodian of the funds for the consumer. Consumers pay for home warranty products and services in a front-loaded fashion so AHP is the custodian of those pre-paid funds.

92.    Ms. Altick, as an employee of Defendants, is a covered employee for purposes of 12 U.S.C. § 5567.

93.    As set forth in the preceding paragraphs, during Ms. Altick's employment, she provided information to Defendants relating to potential violations of the CFPA on multiple occasions.

94.    Defendants retaliated against Ms. Altick for her protected activity in violation of 12 U.S.C. § 5567.

95.    Defendants placed Ms. Altick on a Performance Improvement Plan on March 27, 2023, just a few weeks after she first engaged in protected activity.

96.    Less than one month later, Defendants told Ms. Altick she would be terminated for poor performance on April 20, 2023.

97.    Despite telling Ms. Altick she was being fired for poor performance,  Defendants told Ms. Altick they would give her a "soft landing" and asked her to work until June 23, 2023 so Defendants could find a replacement for her and she could train her replacement. Defendants promised to give Ms. Altick four weeks of severance pay and one month of COBRA premium if she worked until June 23, 2023 and signed a separation agreement and release.

98.    Ms. Altick continued to engage in protected activity even after being told of her termination on April 20, 2023.

99.    On May 11, 2023 and May 19, 2023, Ms. Altick sent additional emails outlining her concerns that certain business practices would cause AHP and Porch to overstate their revenues,

misrepresent their financials, and/or that would constitute deceptive practices against consumers pertaining to home warranty products and services.

100. On June 7, 2023, Ms. Altick's counsel put Defendants on notice of Ms. Altick's legal claims.

101. After Ms. Altick's employment terminated on June 23, 2023, Defendants then retaliated against Ms. Altick for her additional protected activity by refusing to give Ms. Altick the promised severance package.

102. The circumstances set forth in the preceding paragraphs are sufficient to raise the inference that Ms. Altick's protected activity was a contributing factor to (1) the Performance Improvement Plan, (2) her termination, and (3) the refusal to provide her the promised severance.

103. Defendants cannot prove by clear and convincing evidence that they would have taken the same action in the absence of Ms. Altick's protected activity.

104. Defendants' violations of CFPA have damaged Ms. Altick. Ms. Altick seeks the damages awarded to her in the DOL Findings as well as her reasonable and necessary attorney's fees incurred in pursuit of this claim.

**Title VII and Texas Labor Code Ch. 21  Retaliation claims against AHP.**

105. Ms. Altick incorporates the preceding paragraphs as if restated herein.

106. AHP is an employer for Title VII, 42 U.S.C. § 2000e(b) and Tex. Labor Code § 21.002(8).

107. Ms. Altick is an employee as defined by 42 U.S.C. § 2000e(f) and Tex. Labor Code § 21.002(7).

108. Ms. Altick was qualified to perform her job duties for AHP.

109. Ms. Altick engaged in activity protected by Title VII and Texas Labor Code Chapter 21 when she reported her good faith belief that AHP may be violating the laws prohibiting discrimination against female employees in pay. Ms. Altick had a good faith belief she was reporting gender discrimination.

110. AHP retaliated against Ms. Altick after she engaged in protected activity. AHP put her on a performance improvement plan and then terminated her shortly thereafter. AHP refused to pay Ms. Altick the severance promised to her. AHP's action in doing so were adverse employment actions.

111. But for Ms. Altick's protected activity, AHP would not have retaliated against Ms. Altick.

112. AHP's stated reasons for its adverse employment actions is a pretext for retaliation and were not the real reasons for AHP's actions.

113. AHP's retaliation was done with malice and/or a reckless disregard for Ms. Altick's rights in violation of Title VII and Texas Labor Code Chapter 21.

114. AHP's retaliation damaged Ms. Altick.

115. Ms. Altick seeks to recover the damages to which she is entitled for AHP's retaliation in violation of Title VII and Texas Labor Code Chapter 21, including equitable relief, back pay, front pay, fringe benefits, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest, attorneys' fees and costs.

### Texas Labor Code Ch. 21 Retaliation claims against Porch[4].

116. Ms. Altick incorporates the preceding paragraphs as if restated herein.

117. Porch is an employer for Tex. Labor Code § 21.002(8).

---

[4] Ms. Altick's federal Charge of Discrimination against Porch.com, Inc. is still pending. Ms. Altick will seek leave to amend and add her federal law claims for retaliation against Porch.com, Inc. when the EEOC issues its Dismissal and Notice of Rights on that Charge.

118. Ms. Altick is an employee as defined by Tex. Labor Code § 21.002(7).

119. Ms. Altick was qualified to perform her job duties for AHP.

120. Ms. Altick engaged in activity protected by Texas Labor Code Chapter 21 when she reported her good faith belief that Porch may be violating the laws prohibiting discrimination against female employees in pay. Ms. Altick had a good faith belief she was reporting gender discrimination.

121. Porch retaliated against Ms. Altick after she engaged in protected activity. Porch put her on a performance improvement plan and then terminated her shortly thereafter. Porch refused to pay Ms. Altick the severance promised to her. Porch's action in doing so were adverse employment actions.

122. But for Ms. Altick's protected activity, Porch would not have retaliated against Ms. Altick.

123. Porch's stated reasons for its adverse employment actions is a pretext for retaliation and were not the real reasons for Porch's actions.

124. Porch's retaliation was done with malice and/or a reckless disregard for Ms. Altick's rights in violation of Texas Labor Code Chapter 21.

125. Porch's retaliation damaged Ms. Altick.

126. Ms. Altick seeks to recover the damages to which she is entitled for Porch's retaliation in violation of Texas Labor Code Chapter 21, including equitable relief, back pay, front pay, fringe benefits, compensatory damages for intangible harms and losses, punitive damages, pre-judgment and post-judgment interest, attorneys' fees and costs.

### Equal Pay Act Retaliation Claim against AHP and Porch

127. Ms. Altick incorporates the preceding paragraphs as if restated herein.

128. AHP and Porch are each an employer as defined by 29 U.S.C. § 203(d).

129. Ms. Altick is an employee as defined by 29 U.S.C. § 203(e).

130. If AHP and/or Porch paid different wages to employees of opposite sexes for equal work on jobs, the performance of which required equal skill, effort, and responsibility and which were performed under similar working conditions, that would be a violation of the Equal Pay Act, 29 U.S.C. § 206(d).

131. During her employment, Ms. Altick had a good faith belief that AHP and Porch were violating the Equal Pay Act by paying a female employee less than her male peer for work on a job, the performance of which required equal skill, effort, and responsibility and which was performed under similar working conditions. Ms. Altick communicated her concerns to AHP and Porch in emails on January 27, 2023 and February 3, 2023.

132. When Ms. Altick reported these concerns, she engaged in activity protected by law under 29 U.S.C. § 215(a)(3).

133. AHP and Porch retaliated against Ms. Altick for her protected activity by putting her on a performance improvement plan, terminating her and not paying her the promised severance.

134. AHP and Porch's actions in retaliation for Ms. Altick's protected activity violated the Equal Pay Act, 29 U.S.C. § 215(a)(3).

135. Ms. Altick has been damaged by AHP's and Porch's retaliatory actions and seeks to recover all damages she suffered because of AHP's and Porch's retaliation including, equitable relief, back pay, liquidate damages, pre-judgment and post-judgment interest, attorneys' fees and costs under 29 U.S.C. § 216(b).

## Jury Trial

136. Ms. Altick demands a trial by jury.

## **Prayer**

137.     WHEREFORE, for the reasons set forth, Ms. Altick asks the Court to find that Defendants violated SOX and CFPA, Title VII, the Equal Pay Act and Texas Labor Code Chapter 21 by retaliating against Ms. Altick after she engaged in activity protected by SOX and CFPA, Title VII, the Equal Pay Act,  and Texas Labor Code Chapter 21  and to award Ms. Altick the damages suffered as a result of Defendants' retaliatory action, including but not limited to an award of equitable relief,  her lost wages and benefits, reinstatement, special damages for emotional distress, damage to her reputation, personal humiliation and other intangible harms and losses,  reasonable and necessary attorney's fees and costs, pre-judgment and post-judgment interest, and enter such other and further relief to which she is justly entitled.

Respectfully submitted,

/s/ Karen K. Fitzgerald
Karen K. Fitzgerald
State Bar No. 11656750
Fitzgerald Law, PLLC
8150 N. Central Expy, 10th Floor
Dallas TX 75206
214.265.9958 (direct dial)
214.367.6001 (fax)
karen@fitzgerald.law

Attorneys for Plaintiff Ashley Altick

### **Consent of Ashley Altick to Join Lawsuit**

I give my consent to participate in this lawsuit alleging a claim under 29 U.S.C. § 206(d).

/s/ Ashley Altick
Ashley Altick

### Certificate of Service

I certify that I have served a copy of this document on April 17, 2025 by email to:

Theanna Bezney
Keenan Judge
Hunton Andrews Kirth LLP
1445 Ross Avenue, Suite 3700
Dallas TX 75202
TBezney@hunton.com
KJudge@hunton.com

/s/ Karen K. Fitzgerald
Karen K. Fitzgerald